# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2015AP1610-CR |
| COMPLETE TITLE: | State of Wisconsin, |
| |           Plaintiff-Respondent, |
| |     v. |
| | Ginger M. Breitzman, |
| |           Defendant-Appellant-Petitioner. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 371 Wis. 2d 760, 886 N.W.2d 593
(2016 – Unpublished)

| | |
|---|---|
| OPINION FILED: | December 1, 2017 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 20, 2017 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Milwaukee |
|   JUDGE: | Rebecca F. Dallet |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | ABRAHAMSON, J. concurs (opinion filed). |
|   DISSENTED: | |
|   NOT PARTICIPATING: | |

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs filed and an oral argument by *Hannah Schieber Jurrs,* assistant state public defender.

For the plaintiff-respondent, there was a brief filed by *Donald V. Latorraca*, assistant attorney general, with whom on the brief were *Brad D. Schimel,* attorney general, and *Maura F.J. Whelan*, assistant attorney general. There was an oral argument by *Donald V. Latorraca.*

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2015AP1610-CR
(L.C. No. 2013CF270)

STATE OF WISCONSIN : IN SUPREME COURT

State of Wisconsin,

      Plaintiff-Respondent,

      v.

Ginger M. Breitzman,

      Defendant-Appellant-Petitioner.

**FILED**

**DEC 1, 2017**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 ANNETTE KINGSLAND ZIEGLER, J. This is a review of an unpublished decision of the court of appeals, State v. Breitzman, No. 2015AP1610-CR, unpublished slip op., (Wis. Ct. App. Aug. 16, 2016), which affirmed the Milwaukee County circuit court's[1] denial of Ginger Breitzman's ("Breitzman") postconviction motion challenging her convictions for child neglect under Wis. Stat. § 948.21(1)(2013-14)[2] and disorderly conduct under Wis. Stat. § 947.01(1).

---

[1] The Honorable Rebecca F. Dallet presided.

[2] All references to the Wisconsin Statutes are to the (2013-14) version unless otherwise noted.

¶2 In a criminal action by the State, Breitzman was charged with, and convicted of, five crimes relating to her negative interactions, confrontations, abuse, and neglect of her son, J.K., during the time period ranging from November 2011 through December 2012: (1) Physical Abuse of a Child (Intentional Causation of Bodily Harm) under Wis. Stat. § 948.03(2)(b); (2) Physical Abuse of a Child (Intentional Causation of Bodily Harm) under § 948.03(2)(b); (3) Child Neglect (Bodily Harm) under Wis. Stat. § 921.21(1)(b); (4) Child Neglect (Misdemeanor) under Wis. Stat. § 948.21(1)(a); and (5) Disorderly Conduct under Wis. Stat. § 947.01(1).

¶3 In the circuit court, Breitzman filed a postconviction motion under Wis. Stat. § 809.30(2)(h) seeking judgments of acquittal for counts three, four, and five. For all three, she argued that there was insufficient evidence to support a conviction. Additionally, she argued that defense counsel at trial had been ineffective because he failed to move for dismissal of count five for disorderly conduct on free speech grounds, pursued a defense theory of reasonable parental discipline in opening remarks that was inconsistent with Breitzman's plan to deny striking J.K., and failed to object to testimony regarding other-acts evidence. Following a Machner[3] hearing, the circuit court granted the motion for judgment of acquittal as to count three and denied the motion as to counts

---

[3] State v. Machner, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

four and five, concluding that there was sufficient evidence to sustain the convictions on counts four and five and that counsel had not been ineffective at trial.

¶4    In the court of appeals, Breitzman challenged the circuit court's denial of her postconviction motion as to counts four and five, again challenging the sufficiency of the evidence and asserting that defense counsel at trial had been ineffective.  The court of appeals affirmed the circuit court.

¶5    On petition to this court, Breitzman seeks review of the denial of her ineffective assistance of counsel claim.  In this regard, we note that Breitzman's claim does not raise a facial or as-applied challenge to the disorderly conduct statute, Wis. Stat. § 947.01.  A facial challenge would argue that "profane conduct," as listed in § 947.01(1), is not actionable as a crime because profanity is protected speech.  An as-applied challenge would argue that Breitzman's profane conduct in this case was not actionable as a crime because it was protected speech.  Breitzman argues neither.  Breitzman only

3

argues that her trial counsel rendered ineffective assistance.[4] Thus, while this case touches on an interesting issue of free speech law, we reserve full analysis of what constitutes profane speech and whether profane speech is otherwise protected as free speech for another day and confine our analysis here to the ineffective assistance of counsel issue presented, briefed, and argued by the parties.

¶6 The ineffective assistance of counsel issue raised requires consideration of whether counsel was ineffective for any of the following reasons: (1) failing to move to dismiss the disorderly conduct charge on the basis that it violated Breitzman's constitutional right to free speech; (2) failing to

---

[4] We further note that the standard for establishing that a statute is unconstitutional is high; because we assume the constitutionality of statutes, "the party challenging a statute's constitutionality must prove that the statute is unconstitutional beyond a reasonable doubt." See State v. Smith, 2010 WI 16, ¶8, 323 Wis. 2d 377, 780 N.W.2d 90. Additionally, where a statute has been authoritatively interpreted by this court, the party challenging that interpretation must establish that our prior interpretation was "objectively wrong." See Progressive N. Ins. Co. v. Romanshek, 2005 WI 67, ¶45, 281 Wis. 2d 300, 697 N.W.2d 417 (noting that "stare decisis concerns are paramount where a court has authoritatively interpreted a statute"). Wisconsin Stat. § 947.01 has been upheld by this court against facial and as-applied challenges on free speech grounds on numerous occasions. See infra ¶52. Moreover, when an authoritative interpretation of a statute has stood for many years, stare decisis concerns take on even greater significance. See id., ¶52; see also Bauman v. Gilbertson, 7 Wis. 2d 467, 469-70, 96 N.W.2d 854 (1959) (holding that it was not proper to depart from stare decisis where the interpretation stood for 11 years). Here, our interpretation of § 947.01 as constitutional has stood as law for nearly 50 years. See infra ¶52.

present opening remarks consistent with Breitzman's anticipated testimony; and (3) failing to object to testimony regarding other uncharged conduct.

¶7   As to the first, we conclude that trial counsel's failure to move to dismiss the disorderly conduct charge on the basis that it violated Breitzman's constitutional right to free speech was not deficient performance, and thus not ineffective assistance of counsel, because whether profane conduct that tends to cause or provoke a disturbance is protected as free speech is unsettled law.

¶8   As to the second, we conclude that trial counsel's theory of reasonable parental discipline, as presented in opening remarks, was not deficient performance, and thus not ineffective assistance of counsel, because it reflected trial counsel's reasonable expectations, which were rationally based on discussions with Breitzman, and it was part of a reasonable trial strategy.

¶9   As to the third, we conclude that trial counsel's failure to object to testimony regarding uncharged conduct was not deficient performance, and thus not ineffective assistance of counsel, because declining to object was part of a reasonable trial strategy.

¶10  Because we conclude that trial counsel's performance was not deficient, we need not address whether, in the context of ineffective assistance of counsel, there was prejudice to Breitzman, and we decline to do so.

¶11   Thus, we affirm the decision of the court of appeals.

I. FACTUAL AND PROCEDURAL BACKGROUND

¶12 To give proper perspective on the narrow issues we address here, it is important to outline the charges, allegations, and evidence presented to the jury, as well as the theory of defense and strategy of trial counsel.

¶13 The State charged Breitzman with the following five counts: (1) Physical Abuse of a Child (Intentional Causation of Bodily Harm) under Wis. Stat. § 948.03(2)(b), as to striking J.K. in the face, resulting in a bloody nose, for J.K.'s failure to wash the floor; (2) Physical Abuse of a Child (Intentional Causation of Bodily Harm) under § 948.03(2)(b), as to striking J.K. in the face, resulting in a bruise, for J.K.'s failure to prepare a meal; (3) Child Neglect (Bodily Harm) under Wis. Stat. § 948.21(1)(b), as to Breitzman's failing to seek medical care for J.K. when he was sick for a week with vomiting and diarrhea; (4) Child Neglect (Misdemeanor) under § 948.21(1)(a), as to Breitzman's locking J.K. out of the house during the winter; and (5) Disorderly Conduct under Wis. Stat. § 947.01(1), as to Breitzman's engaging in "profane conduct, under circumstances in which such conduct tended to cause a disturbance."[5] Breitzman entered pleas of not guilty and the case was set for a jury trial. At trial, the State's primary witness was J.K., Breitzman's son.

---

[5] The criminal complaint was filed on January 12, 2013, and Breitzman entered pleas of not guilty on May 20, 2013. On January 31, 2013, Breitzman waived her right to a preliminary hearing. An amended information was filed on May 20, 2013.

¶14 As to the first charge, for physical abuse, J.K. testified that he had been sweeping the floor while also trying to keep an eye on his three-year-old little sister. Breitzman wanted him to hurry up sweeping the floor, but his sister was running around the house and throwing things on the floor, in J.K.'s words, "being a three year old." Then, when Breitzman came into the room and saw that he was not sweeping "right or fast enough," she grabbed the broom and struck him on the side of his head with her fist (she could not reach his face because he had raised his hands defensively when she grabbed the broom), telling him he never did anything right and calling him a "piece of shit" and the "dog of the house."

¶15 As to the second charge, also for physical abuse, J.K. testified that he could not recall the precise date on which Breitzman struck him, but he remembered clearly the bloody nose that resulted because it lasted three minutes and he had to go find something to stem the flow. He said that Breitzman had seemed angry with him when she came into his room and then struck him in the face when he would not get out of bed, calling him a "fuck face" and a "retard." When she left, he remembers crying and that he did not know what he'd done wrong.

¶16 As to count three, for child neglect, J.K. testified that, on or about November 18, 2012, he became very ill. He had been vomiting almost every hour and had diarrhea, both of which appeared to have blood in them. When he told Breitzman this, she said she would get him a Gatorade at the end of the week if he was still sick. He testified that he was sick like this for

7

six-to-seven days, but when he asked Breitzman if he could go to the doctor, she refused. This prompted him to call friends and post on Facebook seeking help.

¶17 As to count four, also for child neglect, J.K. testified that, in the winter of 2011-2012, he could not get into the house when he got home from school because his mother had locked the doors. The weather that morning had been warmer, so he had not taken a coat with him to school; the weather grew cooler over the course of the day, however, and it was cold when he returned home at about 3:30 p.m. Finding the house locked, he testified that he knocked on the front and back doors and rang the doorbell for about three minutes to no avail. J.K. said he could tell that Breitzman was home because her car was in the driveway, but she did not come to the door so he crawled under the grill cover on the porch for shelter. He continued to ring the doorbell every fifteen minutes, but spent approximately four hours outside, huddling under the grill cover to keep from freezing.

¶18 As to the fifth charge, for disorderly conduct, J.K. testified that, when he got home from school on December 4, 2012, he put a bag of popcorn in the microwave, but ended up burning it and having to throw it away. When Breitzman got home about a half hour later, he was on the phone with his best friend, D.M., and, when he heard Breitzman come through the door, he hid his phone in his pocket because he was afraid she would be mad. He testified that, when she smelled the burned popcorn and saw the bag in the trash can, she sought him out and

8

told him he always messed things up, calling him a "fuck face," "retard," and a "piece of shit."  He defended himself by saying that he had not done it on purpose, but Breitzman persisted saying she "[didn't] give a fuck."  He then asked Breitzman to stop calling him names, which she responded to by threatening to kick him out of the house.  Later that night he called D.M. back crying and needing someone to talk to.

¶19 Over the course of J.K.'s testimony, he further testified that it was a daily occurrence to be called "retard" and "fuck face."  He also testified that he had not had glasses or treatment for his lazy eye since second grade and had not been to the dentist since he was five; that there was a lock on the refrigerator at home and he could not get lunch at school because Breitzman would not complete the paperwork for free lunches; and that Breitzman struck J.K. once when they were in the car because he disagreed with her about who had taught him a song when he was younger.  The latter came up during trial counsel's cross-examination:

> Q   You just have a problem with frequent nosebleeds?
>
> A   From what it appears.  But this was after the incident when she hit me in the car and my nose was bleeding on me.
>
> Q   By the way, was she driving the car at the time?
>
> A   Yes, sir.
>
> Q   And where were you located?
>
> A   I was in the passenger's seat.

Q  And so it was her attempt to slap you, she was hitting you with the back of her hand at that time?

A  She hit me with the back of her hand.

Q  She couldn't have hit you with the palm of her hand because there wasn't quite a way to do that, right, so she actually had to go this way?

A  Yes, sir.[6]

¶20 The State also introduced evidence to corroborate J.K.'s testimony: J.K.'s best friend, D.M., testified that over the course of about six months, J.K. went from "always happy and nice" to "more stressed out and tired and just more sad." Specifically, when J.K. called him back on the night of December 4, 2012, he said that J.K. seemed "beat down" and that he had "never heard [J.K.] cry before." D.M. also testified that J.K. had a bruise for about a week at the time of the second allegation of abuse; J.K.'s girlfriend, A.G., also verified this.

¶21 J.K.'s neighbor also testified. She said she had sent over Gatorade and crackers in response to J.K.'s Facebook post about being ill——she had had some on hand because her daughter had been sick with the flu. She was also the one J.K. called looking for a place to stay when Breitzman kicked him out on December 4, 2012.

¶22 Additionally, the State called J.K.'s high school counselor and the West Allis detective who investigated J.K.'s

---

[6] In this exchange, the questions were asked by Breitzman's trial counsel and were answered by J.K.

claims. The counselor testified that J.K. met with him on November 29, 2012, and told him about what had been going on at home, that he was tired of being called "retarded" and a "[f]uck face" and being "smacked in the head" by his mother. J.K. then met with a detective from the West Allis Police Department on December 11, 2012. In investigating J.K.'s claims, the detective interviewed Breitzman. The detective testified that Breitzman admitted that she called J.K. names, slapped and backhanded J.K., and did not allow J.K. to have a key to the house.

¶23 Breitzman's general defense to these allegations and charges was that J.K. was lying and that he was a rebellious and irresponsible teenager. She attributed this behavior to the fact that his father had rejected him and that J.K. had a new girlfriend.[7] Specifically, as to counts one and two, Breitzman denied striking J.K., and said that the bruise had been the result of him dropping a dumbbell on his face. As to count three, Breitzman testified that J.K. was not sick for a week, that she told him there were crackers and Gatorade available, and that the redness in his vomit and diarrhea was fruit punch Gatorade, not blood. As to count four, Breitzman confirmed that

---

[7] The defense called two additional witnesses, Ramona Smith and Dan Percifield——both long-time friends of Breitzman. Smith testified that J.K. had been well-behaved up until the last few years, when he became more defiant. Percifield also testified that J.K.'s relationship with Breitzman had deteriorated recently, attributing it to J.K.'s new girlfriend.

she knew what time J.K. got home from school, that she had locked the doors to the house, that she did not let J.K. have a key, and that she chose to take a nap at that time; but she defended her actions by pointing out that there were any number of businesses close by where J.K. could have gone to wait. As to count five, Breitzman said that her conduct was justified because J.K. had scorched the microwave when he burned the popcorn and he "was belligerent with [her]."

¶24 Breitzman further testified that she did call J.K. "retarded," a "piece of shit," and a "fuck face," but not regularly;[8] that she did not get J.K. glasses because she did not have insurance and because he would not wear them when he did have them; that J.K. did not have lunch because he could not remember to bring home the form and did not make his own lunch, and that J.K. always had the code to the lock on the refrigerator, which was just in place to make him think before eating; and that she did strike J.K. in the uncharged incident in the car. Breitzman also testified that she would generally discipline J.K. by grounding him or by taking away phone and/or video game privileges, but would resort to physical violence if she thought he was lying to her, talking back, being belligerent, or if he did not check in when he was out. She testified that she never struck him just to hurt him. In short,

_____

[8] Smith characterized this name-calling as "jok[ing] around." Percifield testified that he had heard Breitzman call J.K. these names on numerous occasions.

Breitzman's defense was that J.K. could not be believed, and that, as a single parent, she "did what [she] thought [she] had to do."

¶25 At trial, the testimony was bookended by attorneys' arguments. As pertains to the ineffective assistance of counsel issue presented here, Breitzman's trial counsel argued in his opening remarks as follows:

> [W]hat's really at the base of this is the question of the instructions that the Court gives you, have any of these been met or not? You will also be getting later on an instruction which is very important to this case, and it is going to be very important when you get to the defense case, and that is the question of reasonable parental discipline privilege, it's a jury instruction, number 950, 950, that's very important because this is eventually what this comes down to. . . .

> Was she intentionally trying to inflict pain beyond the right of a parent to inflict pain and, yes, read chapter or read Jury Instruction 950 when you get it, it actually refers to a parent's right to inflict, that means cause pain, and we know you can cause pain a million ways. You can slap someone if they are disrespectful to you. You can smack someone hard on the back of their butt. You can hit them on the side of their head. . . . You are going to have a couple of days of evidence to consider as to whether my client is a criminal or just a struggling parent, and I believe the evidence will show that she is not a criminal . . . .[9]

As is general practice, the circuit court instructed the jury that attorney arguments are not evidence:

---

[9] We note that, although Breitzman was present for opening remarks and trial, neither the trial nor the Machner hearing transcripts reflect that she expressed any dissatisfaction with trial counsel's statement.

13

> Remarks of the attorneys are not evidence. If the remarks suggested facts not in evidence, disregard the suggestion.
>
> Consider carefully closing arguments of the attorneys but their arguments and conclusions and opinions are not evidence.

¶26 On May 23, 2014, the jury convicted Breitzman of all five counts. After the verdict, the circuit court entered the judgments of conviction.

¶27 On February 6, 2015, Breitzman filed a postconviction motion, seeking judgments of acquittal for counts three, four, and five. For all three, she argued that there was insufficient evidence to support a conviction. Additionally, she argued that defense counsel at trial had been ineffective because he failed to move for dismissal of count five for disorderly conduct on free speech grounds, pursued a defense theory of reasonable parental discipline in opening remarks that was inconsistent with Breitzman's plan to deny striking J.K., and failed to object to testimony regarding other-acts evidence. On May 29, 2015, the circuit court held a Machner hearing on the motion, at which both trial counsel and Breitzman testified.

¶28 As to his failure to challenge the disorderly conduct charge on free speech grounds, trial counsel testified that he had contemplated moving to dismiss count five for disorderly conduct on free speech grounds, but decided not to because it was "too shallow and there wasn't enough guts to it."

¶29 As to his assertion of the reasonable parental discipline theory of defense, Breitzman's trial counsel testified as follows:

14

Q    Prior to the commencement of the actual jury trial, you asked for the Court to include within the opening statements the reasonable discipline defense; isn't that true?

A    . . . yes.

Q    Why did you ask for that?

A    Because it was the only major defense position I believed we could take, regardless of all the charges, because jurors . . . [are] really trying to decide which side is telling the truth in the end . . . and the major morality of this case was whether he had a struggling mother doing the best she could or whether we had a mother engaged in abuse . . . .

That's why I included the recommendation originally, and the client saw the wisdom of it. . . .[10]

¶30    As to his failure to object to other-acts evidence, Breitzman's trial counsel further testified as follows:

Q    Was there a reason why you did not file a motion in limine pretrial to preclude any reference to these other allegations of her bad behavior?

A    The heart of her defense was that she had a rebellious child. She was a single mom with very limited economic resources. She had another child she had to take care of. She had had a very difficult set of circumstances she was dealing with. She had loved her son and had had a good relationship with him until a point in time, a year or two before where he suddenly became rebellious, which she attributed to either school friends or girlfriends, and things had gone downhill from there.

---

[10] In this exchange, the questions were asked by Breitzman's appellate counsel and were answered by Breitzman's trial counsel.

When we talked about how to approach the defense, her concern was that a jury would see that she was doing the best she could. She did not think in advance that anything she did to him was wrong. . . . And I believed her that she didn't at the time believe that she was engaged in criminal activity. She was just doing her best as a parent.

Q Was there any reason, other than that then, why you did not object when discussion of the things we've just talked about, these allegations of bad behavior on her part, were then brought up at trial?

A The plan for the defense is that we believe the son's story, or expression of these things, would go to such an extended or aggravated or aggrandized extent that he would lose credibility, and then she would take the stand and show what really happened, that she cared for her son, that these were difficult, times of rebellion.

. . .

So the best approach would be to be very transparent about it with the jury and to not sit there and make lots of objections on things that would be overruled and become obvious and rather let the jury see what is the other side here. . . .

The facts were what they were, and we would approach the defense very transparently.[11]

¶31 Breitzman also testified at the Machner hearing; her testimony focused on her understanding of the reasonable parental discipline defense and the other acts that might come up. As to the reasonable parental discipline defense, she testified as follows:

---

[11] In this exchange, the questions were asked by Breitzman's appellate counsel and were answered by Breitzman's trial counsel.

Q Did [trial counsel] ever talk to you about arguing reasonable parental discipline in this case?

A Yes.

Q Okay. Did he tell you this is what he intended to argue?

A Yes.[12]

Breitzman said, however, that she told trial counsel she had not struck J.K. on the two charged occasions. She also said that she told him she would admit to striking J.K. in the uncharged incident in the car if it came up, but that she did not want it raised. On cross-examination, Breitzman confirmed that she agreed to trial counsel's reasonable parental discipline defense:

Q And did you agree to asserting the reasonable discipline defense at trial?

A Yes . . . .[13]

¶32 As to other acts, Breitzman testified that she knew her statements about striking J.K. to discipline him——which she made in the interview with the detective——would likely come up, and that she discussed with trial counsel the fact that the trial would likely come down to her word against J.K.'s. She also confirmed that, although she was present during opening remarks, she never voiced any objection to the court regarding

---

[12] In this exchange, the questions were asked by Breitzman's appellate counsel and were answered by Breitzman.

[13] In this exchange, the questions were asked by the State and were answered by Breitzman.

her trial counsel's introduction of the reasonable parental discipline defense.

¶33 On July 17, 2015, the circuit court granted Breitzman's motion as to count three[14] but denied Breitzman's motion as to counts four[15] and five.[16]  As to count four, the circuit court held that there was sufficient evidence to sustain the conviction because it is the "parent's responsibility to provide shelter.  It's not a child's responsibility to find alternative shelter."  As to count five, the circuit court held that there was sufficient evidence to sustain the conviction because there was ample testimony that Breitzman's profane conduct did tend to cause a disturbance, and in fact did cause a disturbance.

---

[14] Count three was the charge for Child Neglect (Bodily Harm) under Wis. Stat. § 948.21(1)(b), as to Breitzman's failure to seek medical care for J.K. when he was sick for a week with vomiting and diarrhea.  The circuit court found that there was insufficient evidence to sustain a conviction because the State had not proven Breitzman's inaction was a substantial factor in harming J.K., specifically that there was no evidence that, had Breitzman taken J.K. to the doctor, it would have made a difference.  Judgment of acquittal on count three was entered on July 24, 2015.

[15] Count four was for Child Neglect (Misdemeanor) under Wis. Stat. § 948.21(1)(a), as to Breitzman's locking J.K. out of the house during the winter.

[16] Count five was for Disorderly Conduct under Wis. Stat. § 947.01(1), as to Breitzman's engaging in "profane conduct, under circumstances in which such conduct tended to cause a disturbance."

¶34 As to the ineffective assistance of counsel claim, the circuit court held that there was no ineffective assistance. With regard to the failure to move for dismissal of the disorderly conduct charge on free speech grounds, the circuit court found that there was no prejudice because it would have denied any motion made on the basis that Breitzman's profanity had no social value and very clear detrimental effects.[17] With regard to admission of other-acts evidence, the court found that there was no deficient performance because it was J.K., not Breitzman's trial counsel, who introduced the uncharged incident in the car, and that her trial counsel's decision not to object on that occasion and on others was part of a reasonable strategy to challenge J.K.'s credibility. Similarly, the circuit court found that trial counsel's reasonable parental discipline theory was not prejudicial because his discussion of it was vague and brief during opening statements. The circuit court further held that there was no aggregate prejudice, in part because it specifically instructed the jury on other acts and limited its instruction on reasonable parental discipline to the context of other acts.

¶35 On August 3, 2015, Breitzman filed notice of appeal. On August 16, 2016, the court of appeals affirmed the circuit

---

[17] We note that this type of balancing has been rejected as a valid method of determining constitutionality under the First Amendment. See United States v. Stevens, 559 U.S. 460, 470 (2010). Because we affirm on other grounds we need not address the propriety of the circuit court's reasoning here.

19

court's denial of Breitzman's postconviction motion. See Breitzman, unpublished slip op., ¶26. The court of appeals held that, as to the free speech claim, there was no prejudice because the motion would have been unsuccessful, id., ¶22; that, as to trial strategy, there was no prejudice because the reasonable parental discipline theory was limited to the uncharged incident where Breitzman did not deny striking J.K., id., ¶24; and that, as to other-acts evidence, there was no deficient performance because counsel's decision not to object was strategic, deliberate, and reasonable, id., ¶23.

¶36 On September 15, 2016, Breitzman filed a petition for review in this court. On March 13, 2017, we granted the petition. Our review here is limited to Breitzman's ineffective assistance of counsel claim, which argues that her trial counsel was ineffective for failing to move to dismiss the disorderly conduct charge on the basis that it violated Breitzman's constitutional right to free speech, for failing to present a theory of defense in opening remarks consistent with Breitzman's anticipated testimony, and for failing to object to other-acts evidence.

## II. STANDARD OF REVIEW

¶37 "Under the Sixth and Fourteenth Amendments to the United States Constitution, a criminal defendant is guaranteed the right to effective assistance of counsel." State v. Lemberger, 2017 WI 39, ¶16, 374 Wis. 2d 617, 893 N.W.2d 232 (quoting State v. Balliette, 2011 WI 79, ¶21, 336 Wis. 2d 358, 805 N.W.2d 334). The same right is guaranteed under Article I,

Section 7 of the Wisconsin Constitution.   Whether a defendant was denied effective assistance of counsel is a mixed question of law and fact.   See State v. Thiel, 2003 WI 111, ¶21, 264 Wis. 2d 571, 665 N.W.2d 305. The factual circumstances of the case and trial counsel's conduct and strategy are findings of fact, which will not be overturned unless clearly erroneous; whether counsel's conduct constitutes ineffective assistance is a question of law, which we review de novo.   Id.   To demonstrate that counsel's assistance was ineffective, the defendant must establish that counsel's performance was deficient and that the deficient performance was prejudicial.   See Strickland v. Washington, 466 U.S. 668, 687 (1984).   If the defendant fails to satisfy either prong, we need not consider the other.   Id. at 697.

¶38  Whether trial counsel performed deficiently is a question of law we review de novo.   See State v. Domke, 2011 WI 95, ¶33, 337 Wis. 2d 268, 805 N.W.2d 364.   To establish that counsel's performance was deficient, the defendant must show that it fell below "an objective standard of reasonableness." See Thiel, 264 Wis. 2d 571, ¶19.   In general, there is a strong presumption that trial counsel's conduct "falls within the wide range of reasonable professional assistance."  State v. Carter, 2010 WI 40, ¶22, 324 Wis. 2d 640, 782 N.W.2d 695.  Additionally, "[c]ounsel's decisions in choosing a trial strategy are to be given great deference."  Balliette, 336 Wis. 2d 358, ¶26.

¶39  Whether any deficient performance was prejudicial is also a question of law we review de novo.   See Domke, 337

21

Wis. 2d 268, ¶33. To establish that deficient performance was prejudicial, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." See Thiel, 264 Wis. 2d 571, ¶20.

### III. ANALYSIS

¶40 In evaluating Breitzman's ineffective assistance of counsel claim, we consider three acts——or failures to act——of Breitzman's trial counsel: (A) trial counsel's failure to move for dismissal of count five for disorderly conduct on free speech grounds; (B) trial counsel's failure to present opening remarks consistent with Breitzman's anticipated testimony; and (C) trial counsel's failure to object to testimony regarding other uncharged conduct.

¶41 As to the first, we conclude that trial counsel's failure to move to dismiss the disorderly conduct charge on the basis that it violated Breitzman's constitutional right to free speech was not deficient performance, and thus not ineffective assistance of counsel, because whether profane conduct that tends to cause or provoke a disturbance is protected as free speech is unsettled law.

¶42 As to the second, we conclude that trial counsel's theory of reasonable parental discipline, as presented in opening remarks, was not deficient performance, and thus not ineffective assistance of counsel, because it reflected trial counsel's reasonable expectations, which were rationally based

22

on discussions with Breitzman, and it was part of a reasonable trial strategy.

¶43 As to the third, we conclude that trial counsel's failure to object to testimony regarding uncharged conduct was not deficient performance, and thus not ineffective assistance of counsel, because declining to object was part of a reasonable trial strategy.

¶44 Because we conclude that trial counsel's performance was not deficient, we need not address whether, in the context of ineffective assistance of counsel, there was prejudice to Breitzman, and we decline to do so.

¶45 Thus, we affirm the decision of the court of appeals.

A.   Trial Counsel Was Not Deficient For Failing
To Move For Dismissal Of The Disorderly Conduct Count
On Free Speech Grounds.

¶46 We consider first whether trial counsel's failure to move to dismiss the disorderly conduct charge on the basis that it violated Breitzman's constitutional right to free speech constituted ineffective assistance of counsel.

¶47 Breitzman argues that the failure to raise a free speech claim was ineffective assistance because the disorderly conduct charge was based on the content of Breitzman's speech in the privacy of her home, which did not fall within one of the narrow categories of unprotected speech.  The State argues that the failure to raise a free speech claim was not ineffective assistance because Breitzman has not demonstrated that, as a

23

matter of settled law, she had a right to engage in profane conduct that tends to cause or provoke a disturbance.[18]

¶48 We conclude that trial counsel's failure to move to dismiss the disorderly conduct charge on the basis that it violated Breitzman's constitutional right to free speech was not deficient performance, and thus not ineffective assistance of counsel, because whether profane conduct that tends to cause or provoke a disturbance is protected as free speech is unsettled law.

¶49 At the outset, we note that, for trial counsel's performance to have been deficient, Breitzman would need to demonstrate that counsel failed to raise an issue of settled law. "[F]ailure to raise arguments that require the resolution of unsettled legal questions generally does not render a lawyer's services 'outside the wide range of professionally competent assistance' sufficient to satisfy the Sixth Amendment." Lemberger, 374 Wis. 2d 617, ¶18 (quoting Basham v. United States, 811 F.3d 1026, 1029 (8th Cir. 2016)). Rather, "ineffective assistance of counsel cases should be limited to situations where the law or duty is clear . . . ." Id., ¶33 (quoting State v. McMahon, 186 Wis. 2d 68, 85, 519 N.W.2d 621 (Ct. App. 1994)). Thus, we turn to the question of whether the

---

[18] We note that Wis. Stat. § 947.01(1) is not limited to public places: "Whoever, in a public or private place . . . ." Thus, the fact that Breitzman was in the privacy of her home does not necessarily affect our analysis.

law is clear that profane conduct that tends to cause or provoke a disturbance is protected as free speech. It is not.

¶50 An individual is guaranteed the right to free speech under Article I, Section 3 of the Wisconsin Constitution, which states in relevant part that "[e]very person may freely speak . . . his sentiments on all subjects, being responsible for the abuse of that right . . . ." The same right is guaranteed under the First Amendment of the United States Constitution, which states in relevant part that "Congress shall make no law . . . abridging the freedom of speech." "Despite the differences in language between these two provisions, we have found no differences in the freedoms that they guarantee." State v. Robert T., 2008 WI App 22, ¶6, 307 Wis. 2d 488, 746 N.W.2d 564.

¶51 The First Amendment case law applicable to profanity and disorderly conduct finds root in Chaplinsky v. New Hampshire, which held:

> There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or "fighting" words——those which by their very utterance inflict injury or tend to incite an immediate breach of the peace. . . . [S]uch utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality. "Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its

25

> punishment as a criminal act would raise no question under that instrument."

315 U.S. 568, 571-72 (1942) (footnotes omitted) (quoting Cantwell v. Connecticut, 310 U.S. 296, 309-10 (1940)).

¶52 In a series of cases post-Chaplinsky, this court upheld Wis. Stat. § 947.01 against numerous free speech challenges. In State v. Zwicker we held that § 947.01 (1967-68)[19] did not violate defendants' free speech rights because "[i]t rarely has been suggested that the constitutional freedom for speech . . . extends its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute." 41 Wis. 2d 497, 513, 164 N.W.2d 512 (1969). In State v. Maker we again upheld § 947.01 (1967-68), noting that any challenge to the disorderly conduct statute based on words spoken or conduct engaged in must balance "the right to maintain the public peace" with "the imperative to protect constitutionally assured personal freedoms." 48 Wis. 2d 612, 615, 180 N.W.2d 707 (1970). In State v. Werstein we upheld § 947.01 (1971-72) once again, emphasizing that "[i]t is the combination of conduct and circumstances that is crucial in applying the statute to a particular situation"; "convictions for being 'otherwise disorderly' result[] from the inappropriateness of specific conduct because of the circumstances involved," namely, where "demeanor could be deemed

---

[19] The operative language of subsection (1) of the statute, which is at issue here, has not changed substantially since these cases were decided.

26

abusive or disturbing in the eyes of reasonable persons." 60 Wis. 2d 668, 672-74, 211 N.W.2d 437 (1973); see also State v. Becker, 51 Wis. 2d 659, 664-65, 188 N.W.2d 449 (1971); State v. Givens, 28 Wis. 2d 109, 121-22, 135 N.W.2d 780 (1965).

¶53 The United States Supreme Court, however, soon after issuing Chaplinsky, narrowed its holding. See Terminiello v. Chicago, 337 U.S. 1, 4 (1949). In Terminiello, the Court held that "freedom of speech, though not absolute . . . is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." Id. But see Roth v. United States, 354 U.S. 476, 482-83 (1957) ("[At the time of ratification] all of [the] States made either blasphemy or profanity, or both, statutory crimes. . . . In light of this history, it is apparent that the unconditional phrasing of the First Amendment was not intended to protect every utterance.").[20]

---

[20] In response, Breitzman cites to Duncan v. United States, 48 F.2d 128 (9th Cir. 1931), for the proposition that "[t]he question of what constitutes profane language . . . is usually dealt with as a branch of the common-law offense of blasphemy." Presumably, Breitzman cites this case to undermine the constitutionality of a statute which regulates speech rooted in archaic norms of propriety. We do not address this issue here, however, as Breitzman has not raised a claim that her speech was not profane, or that the statute is facially unconstitutional or unconstitutional as-applied to her; her claim here is limited to whether defense counsel was ineffective for failing to make such a challenge.

27

¶54 Similarly, while we need not adopt any of the following tests for the purposes of our review today, we note that our more recent case law could be read to restrict statutory regulation of speech to the well-defined categories of unprotected speech: fighting words,[21] speech that incites others into imminent lawless action,[22] obscenity,[23] libel and defamatory speech,[24] and true threats[25].[26] See State v. Douglas D., 2001 WI 47, ¶17, 243 Wis. 2d 204, 626 N.W.2d 725; State v. A.S., 2001 WI 48, ¶16, 243 Wis. 2d 173, 626 N.W.2d 712 ("[The defendant's] speech can be prosecuted only if [it] is one of the limited

---

[21] See Chaplinsky v. New Hampshire, 315 U.S. 568 (1942).

[22] See Brandenburg v. Ohio, 395 U.S. 444 (1969).

[23] See Miller v. California, 413 U.S. 15 (1973).

[24] See New York Times Co. v. Sullivan, 376 U.S. 254 (1964).

[25] See Watts v. United States, 394 U.S. 705 (1969).

[26] See also United States v. Alvarez, 567 U.S. 709, 717 (2012) (adding "speech integral to criminal conduct," "child pornography," "fraud," and "speech presenting some grave and imminent threat the government has the power to prevent" as other content-based restrictions that have been permitted). With regard to content-based restrictions, Breitzman also cites Ashcroft v. American Civil Liberties Union, 542 U.S. 656, 660 (2004) for the proposition that the Constitution "demands that content-based restrictions on speech be presumed invalid . . . and that the Government bear the burden of showing their constitutionality." We express no opinion here, however, as to the constitutionality of Wis. Stat. § 947.01 with regard to whether it is a content-based restriction or otherwise, because Breitzman has not made a facial or as-applied challenge to the statute; her claim here is limited to whether defense counsel was ineffective for failing to make such a challenge.

categories of speech that fall outside the protections of the First Amendment."); cf. Douglas D., 243 Wis. 2d 204, ¶24, (noting that Wis. Stat. § 947.01 is "a recognition of the fact that in some circumstances words carry with them proscribable nonspeech elements," i.e., "conduct"); State v. Schwebke, 2002 WI 55, ¶¶29-31, 253 Wis. 2d 1, 644 N.W.2d 666 (holding that the disorderly conduct statute does not only apply to public disruptions). The depth and breadth of these restrictions on free speech are not so settled in Wisconsin law that counsel's performance could be deemed deficient in this case.

¶55 Additionally, the United States Supreme Court has rejected any balancing test that may be inferred from its historical descriptions of unprotected categories of speech as being "of such slight social value . . . that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." See United States v. Stevens, 559 U.S. 460, 470 (2010) (quoting R.A.V. v. St. Paul, 505 U.S. 377, 383 (1992) (quoting Chaplinsky, 315 U.S. at 572)); see also Brown v. Entm't Merch. Ass'n, 564 U.S. 786, 792 (2011); cf. Brown, 564 U.S. at 792 (quoting Stevens, 559 U.S. at 472) ("'Maybe there are some categories of speech that have been historically unprotected, but have not yet been specifically identified or discussed as such in our case law.'").

¶56 This body of case law does not promulgate a clear standard as to whether a charge under Wis. Stat. § 947.01, based on profane conduct that tends to cause or provoke a disturbance, violates the constitutional right to free speech. And, because

29

Breitzman does not raise a facial or as-applied challenge to the disorderly conduct statute,[27] we are confined to considering the narrower issue of whether the law was so well settled that counsel's performance was legally deficient.  See State v. Castillo, 213 Wis. 2d 488, 492, 570 N.W.2d 44 (1997) ("An appellate court should decide cases on the narrowest possible grounds.").  In that regard, trial counsel was not ineffective for not moving to dismiss the disorderly conduct charge, because doing so would have required that there be a resolution of an unsettled question of law.  See Lemberger, 374 Wis. 2d 617, ¶18.

¶57  We recognize, however, that the use of profanity alone is not enough to sustain a charge for disorderly conduct.  A charge for disorderly conduct has two elements: first, that the defendant "engage[d] in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct"; second, that the defendant's conduct "tends to cause or provoke a disturbance."  See Wis. Stat. § 947.01(1).  Profanity alone might satisfy the first element, but it does not likely satisfy the second element.  Thus, it is not profanity alone that is being regulated by the statute.

¶58  We also note that the charge against Breitzman was not just that she engaged in "profane conduct," but that she "did engage in profane conduct, under circumstances in which

---

[27] See supra ¶5, n.4.

such conduct tended to cause a disturbance . . . ."[28] To be clear, the crime of disorderly conduct under Wis. Stat. § 947.01 requires more than profane speech alone. See Cohen v. California, 403 U.S. 15, 22 (1971) (holding that wearing a jacket bearing the words "Fuck the Draft" did not disturb the peace where the words were the only conduct, in part because there was "no evidence that persons powerless to avoid appellant's conduct did in fact object to it"). But, as is clear from the testimony here, Breitzman was not charged with disorderly conduct solely because she swore at her son in the privacy of her home; rather she was charged and convicted of disorderly conduct because her profane conduct was that which, under the circumstances presented, tended to cause or provoke a disturbance. See Werstein, 60 Wis. 2d at 673-74 ("[C]onvictions for being 'otherwise disorderly' result[] from the inappropriateness of specific conduct because of the circumstances involved," namely where "demeanor could be deemed abusive or disturbing in the eyes of reasonable persons").

¶59 Here, the jury heard evidence of other occasions where Breitzman called J.K. a "fuck face," "retard," and "piece of shit"——and on two of the five occasions charged, this profanity was punctuated by physical abuse. Conviction on count one, for

---

[28] Additionally, we note that the State could have charged Breitzman with more than "profane conduct," as it is one of many options under the statute. Had the State done so, Breitzman acknowledged at oral argument that the constitutional question here would not be in issue.

31

physical abuse, was supported by testimony that Breitzman struck J.K. on the side of the head when he was not sweeping "right or fast enough," calling him a "piece of shit" and the "dog of the house." Conviction on count two, also for physical abuse, was supported by testimony that Breitzman came into J.K.'s room and struck him in the face when he would not get out of bed, calling him a "fuck face" and a "retard."

¶60 The jury also heard testimony from J.K.'s best friend about the impact this had on J.K., who went from "always happy and nice" to "more stressed out and tired and just more sad."[29] A situation need not escalate to violence for the reasonable person to determine that the profanity tended to cause or provoke a disturbance.[30] Simply stated, were this case about profanity alone, isolated from the context and conduct out of which the charge arose, and had Breitzman made a constitutional challenge to the validity of the statute vis-à-vis profanity alone, we might be confronted with the need to resolve a free speech argument. But that is just not this case; rather

---

[29] Additionally, J.K. testified that these interactions with his mother made him feel worthless, often making him cry, ultimately causing him to report this home situation to his counselor at school and to the police.

[30] "It is not necessary that an actual disturbance must have been committed from the defendant's conduct. The law requires only that the conduct be of the type that tends to cause or provoke a disturbance under the circumstances as they then existed. You must consider not only the nature of the conduct, but also the circumstances surrounding that conduct. What is proper under one set of circumstances may be improper under other circumstances." See Wis JI——Criminal 1900 (2016).

Breitzman's conduct, "because [of] the circumstances involved," could rightfully "be deemed abusive or disturbing in the eyes of reasonable persons." Werstein, 60 Wis. 2d at 673-74.

¶61 In sum, Breitzman has failed to demonstrate that counsel's performance was deficient because the law in this area is unsettled.  Additionally, Breitzman's conduct was more than just profanity, and the law does not support the notion that, because Breitzman engaged in profane conduct, she is to be protected from prosecution regardless of the fact that the circumstances tended to cause or provoke a disturbance.  Thus, her trial counsel's performance did not fall below the objective standard of reasonableness.

### B.  Trial Counsel Was Not Deficient For Failing To Present Opening Remarks Consistent With Breitzman's Anticipated Testimony.

¶62 We consider second the issue of whether defense counsel's theory of reasonable parental discipline at trial constituted ineffective assistance of counsel in light of Breitzman's denial that she struck J.K. on the two charged occasions.

¶63 Breitzman argues that it was inconsistent to argue in opening remarks that striking J.K. was reasonable parental discipline where she planned to testify that she did not strike J.K. on the two charged occasions, and that, but for this inconsistency, the jury would have been presented with a more straightforward credibility comparison.  The State argues that Breitzman's counsel's theory of reasonable parental discipline,

as presented in the opening remarks, was not ineffective assistance because it was short, vague, and struck a careful balance between Breitzman's plan to deny that she struck J.K. on the two charged occasions and trial counsel's reasonable anticipation that the uncharged incident in the car would likely arise during testimony; moreover, Breitzman agreed with this strategy and any unfair prejudice was addressed by the circuit court's jury instruction that attorney arguments are not evidence.

¶64 We conclude that defense counsel's theory of reasonable parental discipline, as presented in opening remarks, was not deficient performance, and thus not ineffective assistance of counsel, because it reflected trial counsel's reasonable expectations, which were rationally based on discussions with Breitzman, and it was part of a reasonable trial strategy.

¶65 At the outset, we note that, for trial counsel's performance to have been deficient, Breitzman would need to overcome the strong presumption of reasonableness of her defense counsel's trial strategy by demonstrating that counsel's incorporation of the reasonable parental discipline defense was irrational or based on caprice. Trial strategy is afforded the presumption of constitutional adequacy. See, e.g., Balliette 336 Wis. 2d 358, ¶26; State v. Maloney, 2005 WI 74, ¶43, 281 Wis. 2d 595, 698 N.W.2d 583. "Reviewing courts should be 'highly deferential' to counsel's strategic decisions and make 'every effort . . . to eliminate the distorting effects of

hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" See Domke, 337 Wis. 2d 268, ¶36 (quoting Carter, 324 Wis. 2d 640, ¶22). "This court will not second-guess a reasonable trial strategy, [unless] it was based on an irrational trial tactic or based upon caprice rather than upon judgment." Id., ¶49. In fact, where a lower court determines that counsel had a reasonable trial strategy, the strategy "is virtually unassailable in an ineffective assistance of counsel analysis." State v. Maloney, 2004 WI App 141, ¶23, 275 Wis. 2d 557, 685 N.W.2d 620. Thus, we turn to the question of whether trial counsel's defense theory of reasonable parental discipline was an irrational trial tactic or based on caprice. It was not.

¶66 The parties focus their arguments on defense counsel's opening remarks, which discussed the jury instruction for reasonable parental discipline and framed the issue as "whether [Breitzman] is a criminal or just a struggling parent[.] I believe the evidence will show that she is not a criminal . . . ."

¶67 Trial counsel testified at the Machner hearing that he pursued the reasonable parental discipline theory in part because of his concern about the credibility battle that would play out at trial. He also testified that he discussed the reasonable parental discipline theory with Breitzman, and Breitzman testified that she agreed to it. Trial counsel did not specifically recall whether Breitzman had categorically

denied striking J.K. on the two charged occasions, but did recall that it was important to Breitzman to bring up the uncharged incident in the car to explain J.K.'s level of animosity toward his mother such that he would falsely accuse her of abuse and neglect.[31]

¶68 Given this testimony, defense counsel's decision to incorporate the theory of reasonable parental discipline in his opening remarks was not ineffective assistance. First, "[i]n light of the not uncommon practice of lawyers to argue inconsistent theories, we cannot say that the decision [to do so] deprive[s a defendant] of the right to constitutionally effective assistance, irrespective of whether we or the trial court view that strategy as the best." State v. Marks, 2010 WI App 172, ¶17, 330 Wis. 2d 693, 794 N.W.2d 547; see also Brown v. Dixon, 891 F.2d 490, 494-95 (4th Cir. 1989) (holding that it was not ineffective assistance of counsel where the defense theory was that "Brown either did not commit the murders or did so while drunk" because "the use of inconsistent defenses was objectively reasonable under prevailing professional norms").

¶69 Second, trial counsel's decision was based on a discussion with Breitzman about her relationship with J.K. and the evidence that she expected and wanted to come out at trial;

---

[31] At the Machner hearing, defense counsel testified that "[s]he also told me that she believed that [the car incident] was part of the . . . animus [] he had against her to try to create these other issues such as when he was injured lifting dumbbells and claimed she had struck him, et cetera."

36

therefore, it was not based on caprice. Nor was it irrational: the record reflects that the State pled a number of other acts in its criminal complaint, including the uncharged incident in the car; that Breitzman in fact wanted this other act to come in to establish J.K.'s motive to lie; and that Breitzman never unequivocally told trial counsel that she intended to deny striking J.K. on the two charged occasions.[32] Thus, it was rational for her trial counsel to formulate a strategy and argue a theory of defense with the expectation that some other acts would come out at trial. Such a strategy had to account for the possibility that Breitzman's credibility would be undermined by evidence of other acts, and giving the jury an alternate ground for acquittal in the event that they had doubts about Breitzman's credibility and questions about the other acts was a reasonable means of accommodating such contingency.

¶70 Additionally, there are many aspects of a trial which make its outcome uncertain and we cannot let our judgment of trial strategy be clouded by the clarity of hindsight. See, e.g., Domke, 337 Wis. 2d 268, ¶36 ("Reviewing courts should . . . make every effort to eliminate the distorting

---

[32] In this regard, we note that the circuit court found that defense counsel's testimony at the Machner hearing was credible. In light of Breitzman's bias, both from hindsight and as an interested party, we cannot hold that such a finding was clearly erroneous. See State v. Shata, 2015 WI 74, ¶31, 364 Wis. 2d 63, 868 N.W.2d 93 ("[T]his court will not exclude the circuit court's articulated assessments of credibility and demeanor, unless they are clearly erroneous.").

effects of hindsight.") We have concluded here that defense counsel's decision to argue the reasonable parental discipline defense in his opening remarks was not ineffective based on the record. We note that the record also reflects that Breitzman's trial counsel adjusted his strategy based on the development of evidence at trial: after Breitzman's testimony concluded, her trial counsel adjusted course, successfully advocating for the inclusion of reasonable parental discipline as a therapeutic instruction for other acts and limiting his discussion of reasonable parental discipline during closing argument to the other acts.[33] These adjustments were appropriate.

¶71 In sum, Breitzman has failed to demonstrate that her trial counsel's performance was deficient because pursuing a theory of reasonable parental discipline was rationally based on counsel's discussions with Breitzman and his expectations for what evidence would come out at trial. Additionally, when trial

---

[33] After testimony concluded on day two, and before testimony began on day three, the circuit court conferred with the parties outside the presence of the jury regarding jury instructions. The court expressed concern that there was not enough evidence to give the reasonable parental discipline instruction because Breitzman was denying striking J.K. on the two charged occasions. The State agreed. Defense counsel argued that the instruction was appropriate because the State had introduced other acts, namely the uncharged incident in the car, which entitled Breitzman to assert the reasonable parental discipline defense. The court ultimately agreed to incorporate part of the jury instruction for the reasonable parental discipline defense, see Wis JI—Criminal 950 (2014), as a therapeutic instruction responsive to other acts. See infra ¶78.

did not proceed in accordance with counsel's expectations, he adjusted course and the court's limiting instructions——discussed below——appropriately addressed any potential juror confusion. Thus, trial counsel's performance did not fall below the objective standard of reasonableness.

### C.   Trial Counsel Was Not Deficient For Failing To Object To Testimony Regarding Other Uncharged Conduct.

¶72 We consider third the related issue of whether trial counsel's failure to object to testimony regarding other uncharged conduct constituted ineffective assistance of counsel.

¶73 Breitzman argues that the failure to object to testimony about acts other than those underlying the charges was ineffective assistance because the testimony was inadmissible "other acts" evidence under Wis. Stat. § 904.04 and, but for admission, the jury would have been presented with a more straightforward credibility comparison.  The State argues that the failure to object was not ineffective assistance because allowing this testimony was a reasonable means of accomplishing trial counsel's strategy to undermine J.K.'s credibility by depicting him as a rebellious teenager who was making grandiose allegations; moreover, Breitzman agreed with this strategy.

¶74 We conclude that trial counsel's failure to object to testimony regarding uncharged conduct was not deficient performance, and thus not ineffective assistance of counsel, because declining to object was part of a reasonable trial strategy.

¶75 At the outset, we note that this is again a question of trial strategy, and, as such, that Breitzman must overcome the strong presumption of reasonableness afforded to trial counsel's decisions regarding trial strategy; for trial counsel's performance to have been deficient, Breitzman would need to demonstrate that counsel's decision not to object to other acts was inconsistent with a reasonable trial strategy, that is, that it was irrational or based on caprice.  As noted above, trial strategy is afforded the presumption of constitutional adequacy.  See, e.g., Balliette 336 Wis. 2d 358, ¶26; Maloney, 281 Wis. 2d 595, ¶43.  "Reviewing courts should be highly deferential to counsel's strategic decisions and make every effort 'to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'"  See Domke, 337 Wis. 2d 268, ¶36 (quoting Carter, 324 Wis. 2d 640, ¶22).  "This court will not second-guess a reasonable trial strategy, [unless] it was based on an irrational trial tactic or based upon caprice rather than upon judgment."  Id., ¶49.  In fact, where a lower court determines that counsel had a reasonable trial strategy, the strategy "is virtually unassailable in an ineffective assistance of counsel analysis."  Maloney, 275 Wis. 2d 557, ¶23.  Thus, we turn to the question of whether trial counsel's failure to object to other-acts evidence was an irrational trial tactic or based on caprice.  It was not.

¶76 Here, the trial strategy was to demonstrate that J.K. was making false and grandiose allegations against Breitzman. As a part of this strategy, trial counsel did not object to other acts involving slapping, failing to provide medical care, and/or profanity, because he intended for that evidence to undermine J.K.'s credibility and cast Breitzman as a single parent doing the best she could with a rebellious teenager. In other words, the testimony as to other acts was central to the defense's strategy for bolstering Breitzman's credibility, and its theory of reasonable parental discipline, because, for the defense to be successful, the jury needed to understand the context of the relationship between Breitzman and J.K. so as to appropriately assess credibility and determine culpability. Thus, failing to object to other acts testimony was not deficient performance because it was rational in light of trial counsel's strategy and theory.

¶77 In general, it can be quite effective for a defendant to say 'I did this and I did that, but I did not do what the State has charged me with,' because it tends to establish a defendant's credibility. But, there are many aspects of a trial which make its outcome uncertain and we cannot let our judgment of trial strategy be clouded by the clarity of hindsight. See, e.g., Domke, 337 Wis. 2d 268, ¶36 ("Reviewing courts should . . . make every effort to eliminate the distorting effects of hindsight."). Furthermore, Breitzman agreed to the defense theory of reasonable parental discipline and "[a]n accused cannot follow one course of strategy at the time of

41

trial and if that turns out to be unsatisfactory complain [she] should be discharged or have a new trial." Cross v. State, 45 Wis. 2d 593, 605, 173 N.W.2d 589 (1970). Thus, Breitzman cannot now complain just because a strategy that was reasonable at the outset turned out to be unsuccessful.

¶78 Additionally, the circuit court gave jury instructions that limited any unfair prejudice that may have resulted from the other acts testimony. With regard to other acts, the court instructed as follows:

> Evidence has been presented regarding other conduct of the defendant for which the defendant is not on trial. . . . If you find that this conduct did occur, you should consider it only on the issues of intent and context or background. You may not consider this evidence to conclude that the defendant has a certain character or a certain character trait and that the defendant acted in conformity with that trait or character with respect to the offense charged in this case.

> The evidence was received by [sic] the issues of intent, that is, whether the defendant acted with the state of mind that is required for the offense charged, and to prove context or background that is to provide a more complete presentation of the evidence related to the offense charged.

With regard to the uncharged incident in the car, the court additionally instructed as follows:

> As to [the] striking of [J.K.] with the back of the hand in the car, discipline of a child is an issue. The law allows a person responsible for the child's welfare to use reasonable force to discipline that child. Reasonable force is that force which a reasonable person would believe is necessary.

> Whether a reasonable person would have believed that the amount of force used was necessary and not

42

> excessive must be determined from the standpoint of the defendant at the time of the defendant's acts.
>
> The standard is what a person of ordinary intelligence and prudence would have believed in the defendant's position under circumstances that existed at the time of the alleged offense.

These limiting instructions were sufficient to address any unfair prejudice that may have resulted from the other acts testimony, and in fact bolstered Breitzman's defense regarding reasonable parental discipline. See State v. Marinez, 2011 WI 12, ¶41, 331 Wis. 2d 568, 797 N.W.2d 399 ("We presume that juries comply with properly given limiting and cautionary instructions, and thus consider this an effective means to reduce the risk of unfair prejudice to the party opposing admission of other[-]acts evidence.").

¶79 In sum, Breitzman has failed to demonstrate that counsel's performance was deficient because admission of other acts testimony was central to a reasonable defense theory and strategy. Additionally, any unfair prejudice was appropriately addressed by limiting instructions from the court. Thus, defense counsel's performance did not fall below the objective standard of reasonableness.

### D. We Need Not Consider Prejudice Because Trial Counsel Was Not Deficient.

¶80 To succeed on an ineffective assistance of counsel claim, a petitioner must establish both that counsel's performance was deficient and that the deficient performance was prejudicial. See Strickland, 466 U.S. at 687.

43

¶81 Where the petitioner fails to satisfy either prong of the ineffective assistance of counsel analysis we need not consider the other. See Strickland, 466 U.S. at 697. Because we conclude that Breitzman has not established that trial counsel's performance was deficient, we need not address whether, in the context of ineffective assistance of counsel, the alleged errors individually or cumulatively prejudiced Breitzman, and we decline to do so.

## IV. CONCLUSION

¶82 On petition to this court, Breitzman sought review of the denial of her ineffective assistance of counsel claim. In this regard, Breitzman's claim did not raise a facial or as-applied challenge to the disorderly conduct statute, Wis. Stat. § 947.01. A facial challenge would have argued that "profane conduct," as listed in § 947.01(1), is not actionable as a crime because profanity is protected speech. An as-applied challenge would have argued that Breitzman's profane conduct in this case was not actionable as a crime because it was protected speech. Breitzman argued neither. Breitzman only argued that her trial counsel rendered ineffective assistance. Thus, while this case touched on an interesting issue of free speech law, we confined our analysis to the ineffective assistance of counsel issue presented, briefed, and argued by the parties.

¶83 The ineffective assistance of counsel issue raised required consideration of whether counsel was ineffective for any of the following reasons: (1) failing to move to dismiss the disorderly conduct charge on the basis that is violated

44

Breitzman's constitutional right to free speech; (2) failing to present opening remarks consistent with Breitzman's anticipated testimony; and (3) failing to object to testimony regarding other uncharged conduct.

¶84 As to the first, we conclude that trial counsel's failure to move to dismiss the disorderly conduct charge on the basis that it violated Breitzman's constitutional right to free speech was not deficient performance, and thus not ineffective assistance of counsel, because whether profane conduct that tends to cause or provoke a disturbance is protected as free speech is unsettled law.

¶85 As to the second, we conclude that trial counsel's theory of reasonable parental discipline, as presented in opening remarks, was not deficient performance, and thus not ineffective assistance of counsel, because it reflected trial counsel's reasonable expectations, which were rationally based on discussions with Breitzman, and it was part of a reasonable trial strategy.

¶86 As to the third, we conclude that trial counsel's failure to object to testimony regarding uncharged conduct was not deficient performance, and thus not ineffective assistance of counsel, because declining to object was part of a reasonable trial strategy.

¶87 Because we conclude that trial counsel's performance was not deficient, we need not address whether, in the context of ineffective assistance of counsel, there was prejudice to Breitzman, and we decline to do so.

45

¶88  Thus, we affirm the decision of the court of appeals.


*By the Court.*—The decision of the court of appeals is affirmed.

¶89 SHIRLEY S. ABRAHAMSON, J. *(concurring).* The court's opinion is a very narrow decision limited to the facts of the case and the issues the defendant raised.

¶90 This case does not decide a facial or as-applied challenge to the disorderly conduct statute, Wis. Stat. § 947.01. Breitzman made no such challenge.

¶91 Additionally, in this court, Breitzman does not challenge the sufficiency of the evidence supporting the conviction; Breitzman accepts the jury's finding that her profane conduct tended to cause or provoke a disturbance within the meaning of the statute.

¶92 The claim in the instant case is ineffective assistance of counsel. Breitzman claims that trial counsel was ineffective because counsel failed to raise a First Amendment defense to Breitzman's disorderly conduct charge.

¶93 The majority opinion holds against Breitzman on this claim, relying on the "unsettled law" rubric. The majority opinion asserts that defense counsel was not ineffective because "whether profane conduct that tends to cause or provoke a disturbance is protected as free speech is unsettled law." Majority op., ¶7.

¶94 I write to make two points: (1) Nothing in the majority opinion should be read as commenting on the merits of the underlying First Amendment defense; and (2) The "unsettled law" doctrine guiding the determination of ineffective assistance of counsel is not sufficiently protective of a

1

defendant's constitutional and statutory rights to effective counsel.

¶95 The bench and bar should be working for a better standard for determining the adequacy of representation.

¶96 I write further on a different topic, namely, my practice in participating or not participating in a case depending on my participation in various aspects of the decision-making process. I write on this topic in the instant case in which I am participating because a majority of the court insists that a justice who does not participate in a case merely state on the court record the fact of non-participation or withdrawal from participation and not state grounds for non-participation.

¶97 Lawyers and litigants should know that it is my practice not to participate in a decision when I do not fully participate in every stage of the decision-making process. Thus, for example, if I were present at oral argument but did not participate in the decision conference, I would be shown as not participating in the decision.

¶98 For the reasons set forth, I write separately.