COURT OF APPEALS
DECISION
DATED AND FILED

January 28, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1358-CR**

Cir. Ct. No. **2017CF103**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

RICK EDWARD GENGLER,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Grant County:  CRAIG R. DAY, Judge.  *Affirmed.*

Before Fitzpatrick, PJ, Kloppenburg, and Graham, JJ.

Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).

¶1     PER CURIAM.   Rick Gengler appeals a judgment of conviction and an order denying his postconviction motion.  Gengler was tried and convicted for substantial battery of his father, N.  He contends that trial counsel was ineffective by failing to:  (1) cross-examine Gengler's sister-in-law, who testified that N. told her that Gengler had hit him; (2) call Gengler's brother to testify; (3) obtain and use a voicemail that Gengler left for his brother on the night of the incident; and (4) introduce N.'s medical records.  We affirm.

## BACKGROUND

¶2     On the night of the incident, Gengler and N. had been out drinking together at a bar near a Kwik Trip.  A Kwik Trip employee testified that she was taking garbage out to a dumpster when she saw two men walking toward the Kwik Trip.  She heard them arguing and heard a lot of swearing.  She then saw the younger of the two men, who was wearing a baseball cap, charge the older man and tackle him to the ground.  The younger man proceeded to stand over the older man and say, "I hope you're ready to die."  The Kwik Trip employee reported what she had witnessed to a coworker who contacted the police.

¶3     A police officer who responded to the scene testified that Gengler was wearing a hat and N. was not.  He noted that Gengler appeared to be injured on his lip and above one eye.

¶4     N. testified that he and Gengler lived together and that Gengler had taken care of him for twenty years.  He stated that, on the night of the incident, he and Gengler were out having a few drinks at the bar.  N. said that, when they left the bar and headed toward their parked vehicle near the Kwik Trip, he fell because he lost his footing in the dark on a walkway with a drop-off.  He stated that the injuries he suffered that night were the result of his fall.  N. denied that Gengler had

punched, tackled, or threatened him. He stated that Gengler had fallen while trying to help him up.

¶5    Gengler's sister-in-law testified that she asked N. whether Gengler had hit him because he looked like he had been punched in the eye. She that N. responded "yes" with no hesitation. She asked him two more times, and he confirmed that Gengler had hit him.

¶6    Consistent with N.'s testimony, defense counsel argued to the jury that N.'s injuries were the result of a fall. Counsel pointed out that, regardless of what N. may have told Gengler's sister-in-law, his testimony under oath was that he fell.

¶7    The jury found Gengler guilty, and the circuit court entered judgment accordingly. Gengler filed a postconviction motion claiming ineffective assistance of counsel. After a *Machner*[1] hearing, the circuit court concluded that Gengler failed to show ineffective assistance of counsel, and the court denied Gengler's motion.

## DISCUSSION

¶8    As noted, Gengler claims that trial counsel was ineffective by failing to: (1) cross-examine Gengler's sister-in-law, (2) call Gengler's brother to testify, (3) obtain and use a voicemail that Gengler left for his brother on the night of the incident, and (4) introduce N.'s medical records. According to Gengler, all of these actions that counsel failed to take would have shown that it was more likely that N.

---

[1] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

fell rather than being assaulted by Gengler. For the reasons that follow, we reject Gengler's claims.

¶9    We review claims for ineffective assistance of counsel under the two-part test set forth in ***Strickland v. Washington***, 466 U.S. 668 (1984). Under ***Strickland***, the defendant must show both that counsel's performance was deficient and that the defendant was prejudiced by the deficient performance. ***Id.*** at 687. We need not address both parts of the ***Strickland*** test if the defendant fails to make a sufficient showing on one. *See **id.*** at 697.

¶10    To establish deficient performance, the defendant must show that "counsel's representation fell below an objective standard of reasonableness." ***Id.*** at 688. In assessing counsel's performance, "[r]eviewing courts should be highly deferential to counsel's strategic decisions and make every effort ... to eliminate the distorting effects of hindsight." ***State v. Breitzman***, 2017 WI 100, ¶65, 378 Wis. 2d 431, 904 N.W.2d 93 (internal quotations and cited source omitted).

¶11    To establish prejudice, the defendant must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ***Strickland***, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." ***Id.***

¶12    In reviewing the circuit court's decision on ineffective assistance of counsel claims, "[w]e will not reverse the [circuit] court's factual findings unless they are clearly erroneous." ***State v. Kimbrough***, 2001 WI App 138, ¶27, 246 Wis. 2d 648, 630 N.W.2d 752. "However, we review the two-pronged determination of trial counsel's effectiveness independently as a question of law." ***Id.***

¶13    Gengler first contends that counsel was ineffective by failing to conduct any cross-examination of his sister-in-law, who testified that N. told her Gengler had hit him. Gengler contends, as we understand it, that counsel could have impeached his sister-in-law with prior inconsistent statements.

¶14    At the *Machner* hearing, counsel explained his reasons for not cross-examining Gengler's sister-in-law. Counsel noted that her testimony was very brief, consisting essentially of the answer to one question. He was surprised by the brief nature of her testimony because he knew that she had previously made negative statements about Gengler that included information about a "pattern of abuse." Counsel was aware "that she had witnessed these things that she felt other people were characterizing as accidents that may or may not have been." In reading her body language at trial, counsel thought that Gengler's sister-in-law was also surprised at how brief her direct examination was. He became concerned that, if he asked her questions, "she would, upon redirect or whatever, whatever mechanism, she would get in all this other damaging information that I felt was more damaging." Counsel stated that he made a "strategic decision … to avoid getting all that other information in."

¶15    Based on counsel's testimony, the State contends that counsel made a reasonable strategic decision not to cross-examine Gengler's sister-in-law. We agree and, therefore, we further agree that Gengler fails to show deficient performance on this ground. We will not second-guess counsel's reasonable strategic decision even if a different decision may have also been reasonable. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

¶16     Gengler next contends that counsel was ineffective by failing to call his brother to testify.  According to Gengler, his brother would have testified that he was with N. and Gengler at the bar prior to the incident, that everything seemed fine between N. and Gengler when he left, and that he had no reason to believe that Gengler would have hit or attacked N. that night.[2]

¶17     At the ***Machner*** hearing, counsel explained his reasons for declining to call Gengler's brother to testify.  Most notably, counsel was aware that Gengler's brother, like Gengler's sister-in-law, had made negative statements about Gengler in the past.  Counsel's impression was that Gengler's brother "didn't seem to be a big fan" of Gengler.  Counsel acknowledged that Gengler's brother could have testified that N. had a tendency to fall but, on balance, counsel did not see Gengler as a positive defense witness.

¶18     Based on counsel's testimony, the State argues that it was not deficient performance for counsel to decline to call Gengler's brother to testify.  We agree.  Counsel's testimony again supports a conclusion that counsel made a reasonable strategic decision.

¶19     Gengler next argues that counsel was ineffective by failing to obtain and use a voicemail message that Gengler left for his brother on the night of the incident.  Gengler asserts that counsel should have used the voicemail to cross-examine the Kwik Trip employee.  The circuit court read the voicemail into the record, quoting it as follows:

> [Y]ou know I have tried three times to get Dad up from laying in the fucking concrete.  You got him bleeding, me bleeding and you know what?  You don't fucking quite get it, and you don't give a fuck about his alcoholism or

---

[2] Gengler's brother provided testimony to this effect at the ***Machner*** hearing.

anything that happens to him. This falls on my responsibility. This is bullshit. This is recorded, so fuck you.

Gengler contends that counsel could have used this voicemail to undercut the Kwik Trip employee's version of events, primarily by showing that the swearing she heard could have been Gengler's brother leaving the voicemail after N. fell.

¶20     At the *Machner* hearing, counsel testified that he recalled the voicemail being referenced in a police report. He could not recall, however, whether he had obtained and listened to the voicemail.

¶21     The State argues that Gengler fails to show deficient performance based on the voicemail because the voicemail had extremely little value for purposes of cross-examining the Kwik Trip employee. We agree. Gengler's argument that the voicemail could have been used to undercut the Kwik Trip employee's testimony lacks merit.

¶22     First, the Kwik Trip employee unequivocally testified that she heard arguing and swearing *before* she saw the younger man tackle the older man to the ground, whereas the voicemail indicates that it was recorded *after* N. was already on the ground. Second, the Kwik Trip employee testified that she heard one of the men say "I hope you're ready to die," whereas the voicemail contains no statement of the kind. Finally, nothing in the voicemail calls into question the Kwik Trip employee's testimony that she saw the younger of the two men tackle the older man.

¶23     Gengler's final claim is that counsel was ineffective by failing to introduce N.'s medical records. According to Gengler, the records would have shown that N. was a fall risk and that N. reported to medical staff that he fell on the night of the incident. The State does not dispute that counsel performed deficiently

by failing to introduce medical evidence that N. was a fall risk. The State argues, however, that any deficiency in counsel's performance did not prejudice the defense.

¶24 We conclude that Gengler fails to show prejudice based on counsel's failure to introduce N.'s medical records. Regardless whether N. was a fall risk, the Kwik Trip employee's testimony was powerful evidence from a disinterested witness that, on the night in question, N. did not fall but rather was tackled to the ground by Gengler. The jury apparently determined that her testimony was more reliable than N.'s testimony, and Gengler does not convince us that there is a reasonable probability that N.'s medical records would have changed that determination and produced a different result. Gengler provides no persuasive reason to think that the jury would have doubted the Kwik Trip employee's ability to perceive or recall events.

¶25 In sum, for the reasons stated above, we affirm the judgment of conviction and the order denying Gengler's postconviction motion.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2017-2018).