COURT OF APPEALS
DECISION
DATED AND FILED

April 27, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1940-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF42

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

DANIEL G. PETERS,

DEFENDANT-APPELLANT.

APPEAL from judgment and an order of the circuit court for Crawford County: LYNN M. RIDER, Judge. *Affirmed*.

Before Blanchard, P.J., Fitzpatrick, and Graham, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Daniel Peters appeals a judgment of conviction for operating a motor vehicle with a prohibited alcohol concentration as a seventh or subsequent offense. Peters also appeals the order denying his motion for postconviction relief. He argues that his trial counsel was ineffective by failing to file a suppression motion challenging the expansion and extension of his traffic stop without reasonable suspicion of intoxicated driving. We conclude that Peters has not shown that counsel performed deficiently by failing to file a suppression motion. Peters also argues that counsel was ineffective by stipulating to the admission of evidence that Peters refused to submit to a blood draw and by inadvertently playing video at trial that showed Peters refusing to submit to a preliminary breath test (PBT). We conclude that Peters has not shown that counsel's stipulation or inadvertent playing of the video resulted in prejudice. We affirm.

## Background

¶2 The circumstances of Peters' traffic stop were established through testimony by the deputy sheriff who conducted the stop. The officer initiated the stop after determining that Peters was speeding, and that his vehicle had an excessively loud muffler. The officer approached Peters' vehicle and began speaking with Peters. The officer noticed that Peters' speech seemed a bit slurred or "lethargic." Peters attempted to locate his driver's license by repeatedly digging through his wallet, but he did not produce a license.

¶3 The officer asked Peters to step out of his vehicle and directed Peters to sit in the passenger seat of the officer's squad car. He ran Peters' information and asked Peters questions about his driving status. In running Peters' information, the officer discovered that Peters was subject to a 0.02 blood alcohol

limit and that he had several prior intoxicated driving offenses on his record. As Peters was sitting in the squad car, the officer noticed a strong odor of intoxicants coming from Peters.

¶4  Peters submitted to a series of field sobriety tests that showed additional signs of impairment. The officer requested that Peters submit to a PBT, and Peters declined.

¶5  The officer arrested Peters for operating a motor vehicle while intoxicated and requested that Peters submit to a blood draw for chemical testing of his blood. Peters refused to submit to the request. He was transported to a hospital for a blood draw pursuant to a warrant. An analysis of his blood showed a blood alcohol concentration of 0.082.

¶6  The State charged Peters with one count of operating a motor vehicle with a prohibited alcohol concentration over 0.02 and one count of operating a motor vehicle while under the influence of an intoxicant, each as a seventh or subsequent offense. The case proceeded to a jury trial.

¶7  The prosecution presented the jury with evidence that the analysis of Peters' blood showed that his blood alcohol concentration was 0.082. The evidence included testimony from the chemist who analyzed the blood sample, and who testified that the results were accurate to a reasonable degree of scientific certainty.

¶8  Peters' counsel stipulated that the prosecution could elicit evidence that Peters refused to submit to a blood draw. Later during the trial, counsel inadvertently played video of Peters declining to submit to a PBT.

¶9      The jury found Peters guilty of operating with a prohibited alcohol concentration over 0.02.  It found him not guilty of operating while under the influence of an intoxicant.

¶10     Peters filed a postconviction motion claiming that trial counsel was ineffective by failing to file a suppression motion challenging the expansion and extension of his traffic stop without reasonable suspicion of intoxicated driving. He also argued that counsel was ineffective by stipulating to the admission of evidence that he refused to submit to a blood draw and by inadvertently playing the video showing his refusal to submit to a PBT.  The circuit court denied Peters' motion after holding a *Machner* hearing.[1]

### *Discussion*

¶11     On appeal, Peters renews his same claims for ineffective assistance of counsel.  We discuss each in turn after setting forth the general framework for ineffective assistance of counsel.

¶12     To demonstrate that counsel was ineffective, a defendant must establish both that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  We need not address both prongs of this test if the defendant makes an insufficient showing on one prong.  *See id.* at 697.

¶13     "Counsel's conduct is constitutionally deficient if it falls below an objective standard of reasonableness."  *State v. Thiel*, 2003 WI 111, ¶19, 264

---

[1] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

Wis. 2d 571, 665 N.W.2d 305. Deficient performance is prejudicial if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

¶14    "Whether a defendant was denied effective assistance of counsel is a mixed question of law and fact." *State v. Breitzman*, 2017 WI 100, ¶37, 378 Wis. 2d 431, 904 N.W.2d 93. "The factual circumstances of the case and trial counsel's conduct and strategy are findings of fact, which will not be overturned unless clearly erroneous." *Id.* Whether counsel's conduct constitutes ineffective assistance is a question of law for de novo review. *Id.*

¶15    We turn first to Peters' argument that counsel was ineffective by failing to file a suppression motion challenging the scope of his stop. When deciding whether counsel was ineffective for failing to file a suppression motion, we consider the merits of the motion that counsel could have filed. *State v. Sanders*, 2018 WI 51, ¶29, 381 Wis. 2d 522, 912 N.W.2d 16. "Counsel does not perform deficiently by failing to bring a meritless motion." *Id.*

¶16    As Peters acknowledges, trial counsel testified at the *Machner* hearing that counsel believed that a suppression motion would not be successful. However, we are not bound by counsel's conclusion that the facts would not have supported a suppression motion. Rather, we review independently whether a given set of facts would support suppression. *State v. Bullock*, 2014 WI App 29, ¶14, 353 Wis. 2d 202, 844 N.W.2d 429.

¶17    Peters argues that the officer unlawfully expanded and extended his traffic stop by ordering Peters out of his vehicle and by requiring Peters to sit in

5

the officer's squad car. According to Peters, the officer lacked reasonable suspicion of intoxicated driving at that point in time and, therefore, the officer could not legally detain him in this manner. The State counters that the officer's actions were a lawful part of the mission of the traffic stop and did not require reasonable suspicion of intoxicated driving. We agree with the State.

¶18 "[A] traffic stop 'can become unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission'" of the stop. *See Rodriguez v. United States*, 575 U.S. 348, 354-55 (2015) (quoted source omitted). However, as part of the "mission" of the stop, an officer may make "'ordinary inquiries incident to [the traffic] stop.'" *Id.* at 355 (quoted source omitted). Such inquiries "[t]ypically … involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.*

¶19 Here, the actions by the officer that Peters challenges can be broken down into two relevant steps: (1) requiring Peters to exit his vehicle, and (2) requiring Peters to sit in the passenger seat of the squad car.

¶20 As to the first step, the State correctly points out that this action was lawful pursuant to the United States Supreme Court's decision in *Pennsylvania v. Mimms*, 434 U.S. 106 (1977). In *Mimms*, the Court held that an officer may order a driver out of the driver's vehicle as part of a routine traffic stop. *Id.* at 111 n.6.[2]

---

[2] Peters does not appear to separately challenge the officer's conduct in requiring Peters to walk from Peters' vehicle over to the officer's squad car. Regardless, such a challenge would lack merit under *Pennsylvania v. Mimms*, 434 U.S. 106 (1977), and our supreme court's decision in *State v. Brown*, 2020 WI 63, 392 Wis. 2d 454, 945 N.W.2d 584. In discussing *Mimms*, the court in *Brown* stated that "[t]here is no distinction for Fourth Amendment purposes between law

(continued)

¶21 As to the second step, the State argues that the officer reasonably required Peters to sit inside the squad car because Peters was unable to produce a driver's license. According to the State, the officer provided testimony that supports a conclusion that this was a reasonable approach to completing the mission of the traffic stop. We agree.

¶22 Peters' failure to produce a driver's license necessitated further investigation into whether he was a validly licensed driver, which is one of the ordinary inquiries incident to a traffic stop. *See **Rodriguez***, 575 U.S. at 355. That investigation, in turn, was likely to require additional questioning of Peters. The officer testified that he would require a driver to sit inside his squad car if he had questions about the driver's registration or driving record or if the driver could not find their driver's license. He also testified that "[i]t's just easier to have them in the vehicle with me, instead of walking back up to the car if there [are] questions, or to explain a written warning, verbal warning, or citations."[3]

¶23 Based on this testimony, we conclude that the officer had an objectively reasonable basis connected to the mission of the traffic stop to require Peters to sit inside the officer's squad car. Accordingly, we conclude that Peters

---

enforcement directing a driver to stand next to his car, at the curb, or behind his car, and leading a driver to the front of the officer's squad car." *See **Brown***, 392 Wis. 2d 454, ¶23.

[3] We note that the officer also testified that he would require drivers to sit inside his squad car "more especially if I observe signs of impairment," and that, when he observes signs of impairment, placing a driver in his squad car "is something for sure that is going to happen." Our decision should not be read to imply that an officer may routinely require a driver stopped for a traffic violation to sit inside the officer's squad car under all circumstances. Rather, our conclusion is based on the specifics of this case, in which Peters failed to produce a driver's license and the officer placed Peters in his squad car to inquire about Peters' driving status.

has not established that trial counsel performed deficiently by failing to file a suppression motion challenging the scope of his traffic stop.

¶24 Peters next argues that trial counsel was ineffective by stipulating to the admission of evidence that he refused to submit to a blood draw. He points to counsel's testimony at the *Machner* hearing in which counsel agreed that the use of such evidence was detrimental and prejudicial to the defense. Peters argues that the evidence was prejudicial because it penalized him for exercising his constitutional right to refuse to submit to a blood draw, and because it allowed the State to portray his refusal as consciousness of guilt. He argues that there is a reasonable probability of a different outcome without this evidence.

¶25 The State argues, among other things, that Peters was not prejudiced by counsel's stipulation to the admission of the evidence. We agree. Here, the jury was presented with clear evidence that an analysis of Peters' blood showed that his blood alcohol concentration was 0.082, well above the 0.02 limit that applied to Peters. The blood test results constituted powerful, direct evidence that he was operating with a prohibited alcohol concentration, the only charge on which the jury found guilt. Peters' refusal to submit to a blood draw had no bearing on whether the jury was likely to credit the blood test results. In these circumstances, it is not reasonably probable that the jury's verdict would have been different without evidence that Peters refused to submit to a blood draw.

¶26 Finally, Peters argues that counsel was ineffective by inadvertently playing video of Peters' refusal to submit to a PBT. We agree with the State that this conduct by counsel was not prejudicial for the same reasons that counsel's stipulation was not prejudicial. The evidence that Peters was operating with a

prohibited alcohol concentration was clear, and whether Peters refused to submit to a PBT had no bearing on that evidence.[4]

¶27    In sum, for the reasons stated above, we affirm the judgment of conviction and the order denying Peters' postconviction motion.

*By the Court.—*Judgment and order affirmed.

This opinion will not be published.    *See* WIS. STAT. RULE 809.23(1)(b)5. (2021-22).

---

[4] Peters also argues that the circuit court erred by ruling that the prosecution could play back the inadmissible portion of the video that Peters' trial counsel inadvertently played. The State argues that the court's ruling, if error, was harmless. For reasons already discussed, we agree with the State. It is clear beyond a reasonable doubt that a rational jury would have found Peters guilty of operating with a prohibited alcohol concentration regardless of evidence that Peters refused to submit to a PBT. *See State v. Martin*, 2012 WI 96, ¶45, 343 Wis. 2d 278, 816 N.W.2d 270 ("[I]n order for an error to be deemed harmless, the party who benefited from the error must show that 'it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'" (quoted sources omitted)).