COURT OF APPEALS
DECISION
DATED AND FILED

**April 21, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos. 2024AP471-CR**
**2024AP933-CR**

Cir. Ct. Nos. 2016CF583
2016CF688

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

PETER C. BUNTROCK,

   DEFENDANT-APPELLANT.

APPEALS from judgments and orders of the circuit court for Marathon County: GREGORY J. STRASSER, Judge. *Affirmed*.

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Peter Buntrock appeals from judgments in two consolidated criminal cases convicting him, following a jury trial, of eleven counts related to his sexual assault of a child. He also appeals from the circuit court's orders denying his motion for postconviction relief. On appeal, Buntrock renews his arguments from below that his defense counsel was constitutionally ineffective by informing him that the victim's forensic interview would not be admissible at trial. Buntrock claims that he rejected the State's plea offer and proceeded to trial based on defense counsel's erroneous advice. For the following reasons, we affirm.

## BACKGROUND

¶2 The State charged Buntrock with eleven counts in Marathon County Case Nos. 2016CF583 and 2016CF688. According to the criminal complaints, Buntrock sexually assaulted a 14-year-old child, exchanged nude images with her, and provided her with drugs. The cases were consolidated for trial.

¶3 Prior to trial, the State made multiple plea offers to Buntrock. Pertinent here, the last of these offers proposed that Buntrock plead guilty or no contest to one count of second-degree sexual assault of a child under the age of 16 and one count of possession of child pornography. In exchange, the State would agree to recommend that the circuit court dismiss and read in the remaining nine counts in the Marathon County cases as well as six counts in a separate prosecution in Lincoln County. The State would also seek a presentence investigation report. If Buntrock and the circuit court accepted the plea offer, the State would "either stipulate" at sentencing to concurrent terms of 15 years of initial confinement followed by 7 years of extended supervision on each count or

2

cap its sentencing recommendation to an aggregate sentence of 20 years of initial confinement followed by 5 years of extended supervision.

¶4   Buntrock, who was represented by defense counsel, rejected the State's plea offer. In doing so, Buntrock signed a document which stated that he had reviewed the State's offer and was "proceeding having had sufficient time to review and consider same [sic] after consultation with my attorney."

¶5   At trial, the circuit court admitted portions of an audiovisual recording of the victim's forensic interview over defense counsel's objection. The court recognized that although the victim was 16 years old at the time of the trial, the forensic interview was admissible under the residual hearsay exception. *See* WIS. STAT. § 908.03(24) (2023-24);[1] *see also* WIS. STAT. § 908.08(3), (7). Ultimately, the jury convicted Buntrock of all eleven counts. The circuit court sentenced Buntrock to concurrent sentences totaling 17 years of initial confinement followed by 8 years of extended supervision.

¶6   Buntrock filed a motion for postconviction relief, seeking a new trial and alleging that his defense counsel was constitutionally ineffective by informing him that the forensic interview "would not be admissible at trial." Buntrock further alleged that if he had known before trial that the forensic interview "would be admissible at trial …, there is a reasonable likelihood that he would have settled his case to reduce his" sentencing exposure and "secure a more favorable outcome."

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

¶7 Following a *Machner*[2] hearing, at which Buntrock and defense counsel both testified, the circuit court denied Buntrock's motion for postconviction relief. The court credited defense counsel's testimony that he did not inform Buntrock that the forensic interview *could not* be admitted. Rather, defense counsel told Buntrock that the forensic interview *should not* be admitted "if the court followed the law" but that "it was possible the State would attempt to show parts" of the interview to the jury. Furthermore, the court found that defense counsel recommended to Buntrock that he "accept a plea, regardless of whether" the forensic interview was ultimately admitted into evidence, because he felt that Buntrock "would lose at trial." Additionally, the court concluded that Buntrock had failed to demonstrate that he was prejudiced by defense counsel's alleged deficient performance.

¶8 Buntrock appeals.[3]

## DISCUSSION

¶9 "To demonstrate that counsel's assistance was ineffective, the defendant must establish that counsel's performance was deficient and that the deficient performance was prejudicial." *State v. Breitzman*, 2017 WI 100, ¶37, 378 Wis. 2d 431, 904 N.W.2d 93. "If the defendant fails to satisfy either prong, we need not consider the other." *Id.* "To establish that counsel's performance

---

[2] *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

[3] Buntrock's appointed appellate counsel initially filed a no-merit report with this court. We rejected the no-merit report based on the issue addressed in this opinion.

We also pause to note that neither party addresses whether the circuit court erroneously exercised its discretion by admitting the forensic interview. We therefore assume without deciding that the forensic interview was properly admitted.

was deficient, the defendant must show that it fell below 'an objective standard of reasonableness.'" ***Id.***, ¶38 (citation omitted).

¶10 "Whether a defendant was denied effective assistance of counsel is a mixed question of law and fact." ***Id.***, ¶37. "The factual circumstances of the case and trial counsel's conduct and strategy are findings of fact, which will not be overturned unless clearly erroneous; whether counsel's conduct constitutes ineffective assistance is a question of law, which we review de novo." ***Id.***

¶11 On appeal, Buntrock contends that he successfully demonstrated that defense counsel's performance was deficient because counsel "inaccurately advised him" that the forensic interview "could not be admitted" and "was inadmissible." Buntrock further claims that defense counsel never testified that "he told Buntrock he was not certain" the forensic interview could be admitted and that any finding to the contrary is clearly erroneous. According to Buntrock, he "relied upon the inaccurate information conveyed to him by his attorney and rejected the State's plea bargain in doing so. He believed that his attorney's opinion that the video was inadmissible was a 'huge' factor for the trial."

¶12 Buntrock's assertions of defense counsel's exact advice regarding the admissibility of the forensic interview are contrary to the circuit court's findings, which are supported by the record. Defense counsel testified at the ***Machner*** hearing that he told Buntrock that the forensic interview "should not … come in" and said something to the effect that he did "not expect [the forensic interview] to come in." Defense counsel also confirmed that he told Buntrock that portions of the interview "could" be admitted, and he testified that, as a general rule, he does not inform clients that "anything is certain to happen at any trial because trials are pretty unpredictable."

5

¶13    In addition to not promising Buntrock that the forensic interview would, without question, be excluded at trial, defense counsel also advised Buntrock to accept the State's final plea offer, regardless of the forensic interview's admissibility. Defense counsel testified that he advised Buntrock "[a]t various times" to accept the offer because he believed "we were going to lose at trial." Defense counsel testified that this belief was based on the overwhelming admissible evidence—even excluding the forensic interview—against Buntrock, including "sexual conversations" documented in text messages between Buntrock and the victim and nude images Buntrock sent to the victim.

¶14    Defense counsel's advice to Buntrock to accept the final plea offer regardless of the admissibility of the forensic interview reasonably calls into question the authenticity of Buntrock's claim that counsel informed him that it was a "huge" deal that the forensic interview would not be admissible, and, in fact, the circuit court did not find that counsel ever informed Buntrock of this belief. As defense counsel testified, the forensic interview was not "particularly damaging" to the defense given the strength of the State's case. Further, defense counsel's advice to Buntrock to accept the final plea offer also supports the circuit court's finding that defense counsel did not have reason to believe that the lack of admissibility of the interview guided Buntrock's decision to reject the final plea offer. And, as the circuit court found, "[t]here is no evidence in the record to show that [Buntrock] ever conveyed his position on the relation between the admissibility of the [forensic interview] and his decision to reject the plea" to defense counsel. We must sustain the court's findings as they are not clearly erroneous. *See* *Phelps v. Physicians Ins. Co. of Wis.*, 2009 WI 74, ¶39, 319 Wis. 2d 1, 768 N.W.2d 615 ("[A]lthough evidence may have presented competing factual inferences, the circuit court's findings are to be sustained if they do not go

'against the great weight and clear preponderance of the evidence.'" (citation omitted)).

¶15    Next, Buntrock faults defense counsel for not informing him that the forensic interview could be admitted under the residual hearsay exception. Defense counsel testified that he "[p]robably" did not specifically discuss with Buntrock the possibility of the forensic interview being admitted under WIS. STAT. § 908.03(24). Conversely, defense counsel did express to Buntrock confidence in keeping the forensic interview out of evidence under WIS. STAT. § 908.08. Defense counsel testified that he was "sure" that he would have told Buntrock that the forensic interview "was no longer admissible under" § 908.08 given the victim's age at the time of trial. Further, defense counsel explained that, pretrial, the prosecutor had informed counsel that the prosecutor thought the State could admit portions of the forensic interview as prior consistent statements. Defense counsel testified that he "probably would have shared" with Buntrock that he was "pretty confident that there weren't prior consistent statements."

¶16    The flaw with Buntrock's argument regarding the residual hearsay exception is that defense counsel testified, and the circuit court found, that counsel informed Buntrock that the forensic interview, or at least portions of it, could be admitted into evidence, although it should not be, and that the State might attempt to get the interview into evidence. Buntrock fails to cite any legal authority dictating that counsel is ineffective in these circumstances by failing to discuss every potential avenue of admissibility with a defendant when counsel informs the defendant that the evidence "could" be admitted. The facts remain that defense counsel informed Buntrock that the State might seek to admit the forensic interview and that it could, ultimately, be admitted.

7

¶17     Furthermore, Buntrock argues that defense counsel performed deficiently by not informing him that the interview could be played "from start to finish."[4]   Defense counsel testified that he told Buntrock, based on counsel's discussion with the prosecutor, that "specific portions" of the interview "could" be admitted.  Buntrock fails to explain how the State playing "the first … two-thirds" of the interview does not constitute a "portion" of the total interview.  Moreover, as the circuit court found, "[a] reasonable interpretation of" defense counsel's statement is that, "if the court follows the law, the [forensic interview] should not be shown to the jury, but nothing at trial is a certainty and the jury may see the parts of the video."

¶18     Buntrock also appears to suggest that we should assess defense counsel's performance using Buntrock's subjective interpretation of what counsel said regarding the admissibility of the forensic interview.  However, to establish that defense counsel's performance was deficient, Buntrock must show that it fell below "an *objective* standard of reasonableness."  *See Breitzman*, 378 Wis. 2d 431, ¶38 (emphasis added; citation omitted).  As explained, defense counsel's performance was objectively reasonable.  This is true regardless of Buntrock's subjective interpretation of counsel's statements.

¶19     Given the foregoing, defense counsel did not perform deficiently.  Because we conclude that defense counsel did not perform deficiently, we need not address whether Buntrock was prejudiced by any deficient performance.  *See Lafler v. Cooper*, 566 U.S. 156, 164 (2012) (listing the requirements a

---

[4] Buntrock clarifies that by using the phrase "from start to finish," he means that the "substantive entirety of the victim's narrative of what she accused Buntrock of doing" was "played at trial."

defendant must show to prove prejudice on an ineffective assistance of counsel claim based on the rejection of a plea offer).

>*By the Court.*—Judgments and orders affirmed.

>This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.